## ALEXANDER LAZARUS *v.* LENA GRACE ROSEWARNE.

### APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED MAY 12, 1909.                    DECIDED MAY 25, 1909.

HARTWELL, C.J., WILDER AND PERRY, JJ.

TRUSTS—*bill to declare.*
    Bill dismissed on the evidence. Decree affirmed.

OPINION OF THE COURT BY HARTWELL, C.J.

The plaintiff's bill seeks to establish a trust by parol in his conveyance to his niece, the defendant, April 11, 1905, of a parcel of land in Honolulu, and in his conveyance to her April 22, 1905, of certain land at Kaupo, Maui, and his bill of sale to her dated April 22, 1905, of a piano, with certain pictures, chairs, sofas, rings, bracelets, watch, rugs, bed, cash register,

trunks, sewing machine and tables. The bill alleges that the defendant had agreed with the plaintiff that he should appoint her his trustee to take care of his property and that on account of his confidence in her he deposited with her $1000 he had saved and kept buried in the ground and which upon his attorney's advice was afterwards paid to his wife; that after the execution of the deed and bill of sale he collected the rents on the premises conveyed with the understanding that defendant was acting as his trustee; that he was then in the employ of said defendant's mother and was "solely under her influence and had his full confidence" (referring perhaps to the niece); that all the property he had left was a piece of land in Honolulu mortgaged for over $6000; that the defendant conveyed to a co-defendant, Maria. C. Andrade, a portion of the land in Honolulu conveyed to her by the plaintiff, said Maria then knowing that the said Lena "was only acting as a trustee for the plaintiff;" that when the deeds and bill of sale were made the plaintiff "was enfeebled in mind and ignorant as to his rights in the premises," and that defendant, well knowing his condition, by fraud, wilful misrepresentation, fraudulent concealment and suppression of the facts, and knowing his confidence in her, procured his order for paying his money to her and procured the deeds and bill of sale without any consideration.

The defendant's answer denies that either of the deeds or the bill of sale was made on account of any agreement of trust or for any other reason than that the plaintiff, being sued for divorce by his wife in October 1905, which was granted February 6, 1906, obtained from the niece $300 from time to time prior to the divorce, in order to enable him to pay costs, counsel fees and alimony, upon his agreement to convey to her property enough to cover it; that April 11, 1905, at his solicitation, she bought the land for $1000 which sum the wife required in settlement with him and for release of dower, and that April

22, 1906, the plaintiff, in payment of the $300, conveyed, as we understand the pleadings, certain other land to her and executed and delivered to her the bill of sale in consideration of $490 which she paid him.

During the trial, the evidence failing to show that the co-defendant Maria Andrade purchased with knowledge of any trust, the plaintiff discontinued as to her. The judge after hearing the case dismissed the bill on the ground that it was not sustained by evidence.

The plaintiff testified that about a month before the papers were made his sister told him to turn his property over to his niece to manage because "you are a drinking man, you will get drunk and squander everything," and again, because he "would be busy and go off on a spree with women and have a good time;" that he "signed the first paper" at the office of Mr. Dunne, former assistant United States district attorney, where his sister and niece told him that the "paper" was "to give them the right to take charge of my property;" that the other papers were drawn some days after by Antone Manuel, messenger of the federal court, there being another paper for 22.02 acres at Kaupo, Maui, the second and third papers being drawn by Manuel and signed by the plaintiff at the saloon where he worked; that he collected the rents on the Honolulu property and turned them over to his niece thinking she would deposit them in the bank and that he did the same with his wages, the sister and the niece giving him to understand that whatever he turned over to them would be deposited in the bank and that he had over $1000 there; that he had over $300 there "when they took charge of my affairs;" that he got another lawyer to bring his wife's divorce suit against him; that he collected the rents while he was living with his wife until "stopped by them" (apparently until his divorce February 6, 1906,); that he had not known that his niece claimed the land until recently when he heard that it was sold to a Portuguese whose daughter told

him her mother had bought it; that he had a pass-book in Bishop & Co.'s Saving Bank in which he deposited $20 in the niece's name to pay for services in taking charge of his property and that he had some money in the Phoenix Loan Association Bank which he had changed to her name; that when he signed the bill of sale he delivered to his niece all the personal property named in it because "they told me, you take those personal effects down to the house; I had no right to look out for them; I would have a good time and be damaging them;" that after he made the deeds and bill of sale he went two or three times to the niece to recover his property; that they asked him if he had money that he had placed somewhere else; he told them he had $1000 in gold he had buried under ground—under the house in which he lived with his wife; that after the papers were served he gave this to the niece who had told him that she would take care of it; that when he "made arrangements for the divorce" Dunne told him that if he would pay the $1000 he could recover his property and he went to his niece to get it and she returned it to him at Dunne's office and he paid it to his wife who "would have no further claim on my property."

The only witness corroborating the plaintiff to any extent is Clark who testified that the plaintiff was always called a lolo (lummox); that he heard a talk between the plaintiff and the defendant and her mother in 1905 that "there was going to be a trust deed between them."

Manuel testified for the defendant that he drew the bill of sale at the plaintiff's request the plaintiff giving him a list of the articles named in it, and that the plaintiff acknowledged it at his saloon, the witness first having read or explained it to him and nothing having been said about any trust; that he thinks Dunne drew the deed of April 11, 1905, of some property on the slope of Punchbowl which the plaintiff acknowledged before the witness in Dunne's office, at whose request he read it over to the plaintiff; that he drew the deed of April 22 of

property on Maui, which he read to the plaintiff and which the plaintiff acknowledged before him; that nothing was said about any trust or that Lena Rosewarne got the property in trust; that the $1000 was paid to Dunne in his office either by Mrs. Juen (the mother) or the defendant, he is not sure which; that it was said then that the payment was "about comprising the divorce proceeding."

Mrs. Juen testified for the defendant that she never had any conversation with the plaintiff about placing his property in trust with the defendant; that the plaintiff wanted Lena to buy the Kinau street property in order to get money to pay his wife, and came to their house and said "Dunne wants to see you;" that she went to his office with the defendant and there Dunne said "Your uncle told me he wants to sell you the land. Do you want to buy the land?" and afterwards wrote the defendant to know whether she was willing to pay $1000; that the plaintiff never paid any money to her or to the defendant to put into the Phoenix Savings Bank; that the plaintiff and defendant talk in the English language; that the $1000 were paid to Dunne for the Kinau street land which the plaintiff wanted to sell to Lena; that nothing was said about the defendant holding the property in trust for the plaintiff; that the $490 (mentioned in the bill of sale) were paid to the plaintiff by the defendant who got the money from the witness and that the deed of April 22 was made to the defendant to pay her the $300 he owed her.

The defendant testified that she bought the Punchbowl (Kinau street) land of the plaintiff for $1000 and paid it to him after the settlement of his divorce, it being understood that she was to pay it when his wife released her dower; that she paid him $490 for the personal property and $300 for the Maui land; that the plaintiff made over to her as a birthday present his Phoenix Company book in which six monthly instalments were paid amounting to about $60 and

that she afterwards paid in money, finally drawing out the entire deposit amounting to something like $300; that the Maui land was not worth $300; the personal property about $200; that she let the plaintiff keep the diamond ring worth about $80; that it was not until after the wife released the dower, February 1906, and was paid the $1000, that she collected the rents, up to that time the plaintiff collecting them although the deed was executed ten months before; that after the divorce the plaintiff never asked her for the rents or property and never deposited any money with her nor did she get any from him; that she borrowed the $1000 from Mr. Picker and the $490 for the personal property from her mother.

The least we can say about the case is that the bill was not sustained by the evidence and was properly dismissed.

Decree affirmed.

*W. C. Achi* for plaintiff.

*C. F. Clemons* (*Thompson & Clemons* on the brief) for defendant.